[712 NYS2d 600]

In the Matter of GARY AJELLO, an Attorney, Respondent. GRIEV-
ANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT,
Petitioner.

Second Department, August 21, 2000

### APPEARANCES OF COUNSEL

*Gary L. Casella,* White Plains (*Forrest Strauss* of counsel),
for petitioner.

*Richard E. Grayson,* White Plains, for respondent.

OPINION OF THE COURT

Per Curiam.

The respondent was served with a petition containing 26 charges of professional misconduct against him, all but one of which alleged escrow violations. In his answer to the petition, the respondent denied, in part, the factual allegations contained in Charges Nine, Ten, Thirteen, Fifteen, Eighteen, and Twenty-five. He admitted the factual allegations contained in the remaining charges, but denied violating the disciplinary rules.

At the hearing, the petitioner's case consisted of exhibits numbered One through Forty-two. The respondent called four character witnesses and testified on his own behalf. In addition, he introduced eight exhibits into evidence. At the conclusion of the hearing, the Grievance Committee conceded that Charges Nine, Ten, Fifteen, and Twenty-three had not been proven by a fair preponderance of the evidence. The Special Referee sustained all of the charges except those four. The Grievance Committee now moves to confirm the Special Referee's report. The respondent does not oppose the Grievance Committee's motion, except with regard to Charge Twenty-six. Moreover, he argues that the sanction imposed should be limited to a public censure on the condition, among others, that a certified public accountant reconcile his escrow account on a monthly basis.

Charges One through Eight, Eleven through Fourteen, Sixteen, Seventeen, and Nineteen through Twenty-two alleged that the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (8) (now [7]) (22 NYCRR 1200.3 [a] [8] [now (7)]), by converting funds from his IOLA trust account:

Charge One alleged that between April 30, 1993 and May 31, 1995, the respondent was the sole signatory of an attorney IOLA account at the Bank of New York captioned as the "Gary Ajello Trust Account." From September 10, 1993 until September 15, 1993, the balance in that account was a negative number.

Charge Two alleged that between November 22, 1993 and June 22, 1994, the respondent used his IOLA account to receive and/or disburse funds in connection with the Armand Ajello matter. The funds disbursed for that matter exceeded the funds deposited.

Charge Three alleged that on October 6, 1993, one or more checks that were disbursed by the respondent in connection

with the Anglero matter cleared his IOLA account. However, no funds were on deposit for that matter until November 1, 1993.

Charge Four alleged that between May 13, 1993 and November 15, 1993, the respondent used his IOLA account to receive and/or disburse funds in connection with the Bianchi matter. On at least three occasions during that period, checks that were issued by the respondent for the Bianchi matter cleared his IOLA account when the Bianchi balance was zero or a negative number.

Charge Five alleged that between July 2, 1993 and May 15, 1995, the respondent used his IOLA account to receive and/or disburse funds in connection with the Chianese matter. The funds disbursed for that matter exceeded the funds deposited.

Charge Six alleged that on November 1, 1993 and January 21, 1994, two checks that were issued by the respondent in connection with the Delegatti matter cleared his IOLA account. Despite repeated requests by the petitioner, the respondent failed to provide any evidence that Delegatti funds were deposited into his IOLA account before those disbursements were made.

Charge Seven alleged that between September 28, 1993 and December 23, 1993, the respondent used his IOLA account to receive and/or disburse funds in connection with the Duffee matter. The funds disbursed for that matter exceeded the funds deposited.

Charge Eight alleged that between September 23, 1993 and May 8, 1995, the respondent used his IOLA account to receive and/or disburse funds in connection with the Fernandez matter. During that period, one or more checks issued by the respondent for the Fernandez matter cleared his IOLA account when the Fernandez balance was insufficient to cover the amount of the check.

Charge Eleven alleged that on June 6, 1994 and October 28, 1994, the respondent used his IOLA account to receive and/or disburse funds in connection with the Guerrette matter. The funds disbursed for that matter exceeded the funds deposited.

Charge Twelve alleged that on September 28, 1993, the respondent deposited $6,950 into his IOLA account in connection with the Guerra matter. However, the money should have been deposited into the respondent's Federal Home Mortgage Loan account at the Bank of New York. On September 19, 1994, a check in the amount of $6,950 cleared the IOLA account to cor-

rect that error. On December 9, 1994, another check in the amount of $6,950 cleared the IOLA account to correct the same error.

Charge Thirteen alleged that on August 22, 1994 and December 12, 1994, the respondent used his IOLA account to receive and disburse funds in connection with the Johnston matter. The funds disbursed for that matter exceeded the funds deposited.

Charge Fourteen alleged that between May 14, 1993 and June 11, 1993, approximately five checks cleared the respondent's IOLA account in connection with the Martak matter. However, no funds were deposited into the account for the Martak matter.

Charge Sixteen alleged that on January 20, 1994, a check in the amount of $500 payable to the respondent cleared his IOLA account in connection with the Miller matter. However, no corresponding deposit was made until March 25, 1994.

Charge Seventeen alleged that between December 24, 1993 and April 21, 1994, the respondent used his IOLA account to receive and/or disburse funds in connection with the Parkinson matter. The funds disbursed for that matter exceeded the funds deposited.

Charge Nineteen alleged that between February 24, 1994 and December 5, 1994, the respondent used his IOLA account to receive and disburse funds in connection with the Rubenstein matter. The funds disbursed for that matter exceeded the funds deposited.

Charge Twenty alleged that between March 8, 1995 and March 10, 1995, checks in the amount of $750 and $600, respectively, cleared the respondent's IOLA account in connection with the Stanza matter. However, the corresponding deposit was not made until March 16, 1995.

Charge Twenty-one alleged that between January 6, 1994 and June 30, 1994, the respondent used his IOLA account to receive and/or disburse funds in connection with the Troiano matter. On two or more occasions during that period of time, a check disbursed for the Troiano matter cleared the account when the balance was insufficient to cover it.

Charge Twenty-two alleged that between March 23, 1995 and May 18, 1995, the respondent used his IOLA account to receive and/or disburse funds in connection with the Trumbutori matter. On one or more occasions during that period, a check disbursed for the Trumbutori matter cleared the account when the balance was insufficient to cover it.

Charge Twenty-four alleged that the respondent improperly disbursed funds from his IOLA account and/or engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 9-102 (e) (22 NYCRR 1200.46 [e]) and DR 1-102 (a) (8) (now [7]) (22 NYCRR 1200.3 [a] [8] [now (7)]), by issuing a check to a party other than a named payee:

On April 21, 1994, check number 886 in the amount of $25, which was payable to cash, cleared the respondent's IOLA account.

Charge Twenty-five alleged that the respondent failed to properly identify his IOLA account as an attorney trust account, and/or engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 9-102 (b) (2) (22 NYCRR 1200.46 [b] [2]) and DR 1-102 (a) (8) (now [7]) (22 NYCRR 1200.3 [a] [8] [now (7)]):

The checks, deposit tickets, and bank statements for the respondent's IOLA account, captioned as the "Gary Ajello Trust Account," failed to specify that the account was an *attorney* trust account.

Charge Twenty-six alleged that the respondent neglected a legal matter entrusted to him and/or engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (8) (now [7]) (22 NYCRR 1200.3 [a] [8] [now (7)]) and DR 6-101 (a) (3) (22 NYCRR 1200.30 [a] [3]), by failing to timely answer a complaint in a litigated matter:

Between September 23, 1993 and March 5, 1995, the respondent represented Francis and Angelina Lombardi in connection with the sale of their home in Yorktown, New York. On September 28, 1993, the respondent deposited into his IOLA account the $19,250 downpayment of the prospective purchasers, Harold and Pauline Abramson. Subsequent developments prevented the sale from closing and a dispute arose in January of 1994 over how the downpayment should be disbursed. On January 31, 1994 and February 8, 1994, the respondent was served with a summons and notice in the matter of *Abramson v Lombardi*. On July 13, 1994, the plaintiffs served a complaint on the respondent naming the Lombardis and the respondent as defendants. On September 19, 1994, the plaintiffs moved for an entry of judgment in their favor upon the defendants' failure to answer the complaint. On October 7,

1994, the respondent opposed the plaintiffs' motion and cross-moved to dismiss the complaint. On January 4, 1995, the plaintiffs' motion was granted. The cross motion was denied on the ground that it was unauthorized because the defendants did not deny that they defaulted in answering the complaint.

In view of the respondent's testimony and the evidence adduced at the hearing, all of the charges except Nine, Ten, Fifteen, Eighteen, and Twenty-three are sustained.

In determining the appropriate measure of discipline to impose, the respondent asks the Court to consider that the Special Referee did not find that he was venal or misappropriated client funds. The respondent alleges that no clients were harmed as a result of his misconduct. The respondent contends that the sanction imposed should be limited to a public censure on the condition that he retain a certified public accountant to reconcile his escrow account on a monthly basis, among other things. Alternatively, the respondent contends that he be prohibited from maintaining an escrow account.

The respondent's prior disciplinary history consists of a letter of admonition dated February 26, 1996 and a letter of reprimand dated November 9, 1999.

Under the totality of the circumstances, the respondent is disbarred.

MANGANO, P. J., O'BRIEN, RITTER, SANTUCCI and McGINITY, JJ., concur.

Ordered that the Grievance Committee's motion to confirm the Special Referee's report is granted to the extent that all of the charges except Nine, Ten, Fifteen, Eighteen, and Twenty-three are sustained, and the motion is otherwise denied; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Gary Ajello, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall promptly comply with this Court's rules governing the conduct of disbarred, suspended and resigned attorneys (see, 22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, Gary Ajello is commanded to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice,

board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.